```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

DAVID C. PETTIGREW,

                Petitioner,

-vs-

NORMAN BEZIO,
SUPERINTENDENT

                Respondent.

**DECISION AND ORDER**
**No. 10-CV-01053(MAT)**

_____

## I. Introduction

*Pro se* Petitioner David C. Pettigrew ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered December 19, 2007, in New York State, County Court, Niagara County, convicting him, upon his guilty plea, of Sexual Abuse in the First Degree (N.Y. Penal Law ("Penal Law") § 130.65[2]) and Criminal Contempt in the First Degree (Penal Law § 215.51[b][vi]).  Petitioner was sentenced to a determinate term of seven years imprisonment plus three years of post-release supervision on the sexual assault conviction, and an indeterminate prison term of from one and one-third to four years imprisonment on the contempt conviction.

**II.   Factual Background and Procedural History**

   **A.   Introduction**

Petitioner was initially charged in or about 2006 in the Niagara County Family Court with abuse and neglect proceedings relating to the victim in this matter, Petitioner's then 14 or 15 year old daughter. When Petitioner violated an order of protection, misdemeanor contempt proceedings were initiated in the Lockport City Court. In or about March through May 2006, Petitioner began committing sex abuse crimes against his daughter, and the Niagara County District Attorney's Office brought the evidence of those crimes, and of Petitioner's violations of orders of protection, before a grand jury.

On July 12, 2007, a Niagara County grand jury charged Petitioner with two counts of Sexual Abuse in the First Degree (Penal Law §§ 130.65[1][2]) (physical helplessness and forcible compulsion), three counts of Rape in the Second Degree (Penal Law § 130.30[1]), one count of Rape in the First Degree (Penal Law § 130.65[1]), one count of Criminal Contempt in the First Degree (Penal Law § 215.51[b][vi]), and three counts of Criminal Contempt in the Second Degree (Penal Law § 215.50[3]). See Resp't Ex. D at 8-12.

   **B.   Plea & Sentencing**

On October 18, 2007, Petitioner and his attorney appeared before Niagara County Court Judge Peter L. Broderick, Sr., and

Petitioner agreed to plead guilty to the first and sixth counts of the indictment (first degree sexual abuse (helplessness) and first degree criminal contempt). Plea Mins. [P.M.] 2-6. Petitioner admitted that, for purposes of his own sexual gratification, he had touched his daughter while she was sleeping. P.M. 16. Petitioner also admitted that he "intentionally place[d] or attempt[ed] to place [his daughter] in reasonable fear of imminent physical injury by physical menace while an order of protection was outstanding in her behalf," by restraining her from leaving the house. P.M. 16.

On December 19, 2007, Petitioner was sentenced to a determinate prison term of seven years, plus three years of post-release supervision, for the sexual abuse conviction, and to an indeterminate prison term of from one and one-third years to four years for the contempt conviction. The sentences were ordered to run concurrently. Sentencing Mins. [S.M.] 12.

### C. Direct Appeal

Through counsel, Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department on the following grounds: (1) the appeal waiver was invalid; and (2) Petitioner's sentence was harsh and excessive. See Resp't Ex. C. Petitioner also filed a *pro se* supplemental brief arguing that: (1) he did not violate the temporary order of protection (implicated in Count 9 of the indictment charging him with Criminal Contempt in the Second Degree) insofar as said order had expired on

or about January 17, 2007; (2) prosecutorial misconduct in the Lockport City Court; (3) Petitioner received ineffective assistance of counsel in Lockport City Court because counsel did not argue that Petitioner had not committed contempt "on February 16, 17, 2007"; (4) Petitioner received ineffective assistance of counsel in the Niagara County Court because counsel elected not to adopt Petitioner's *pro se* motion; and (5) the Niagara County prosecutor committed misconduct in the grand jury proceedings. See Resp't Exs. C, E. On February 6, 2009, the Appellate Division unanimously affirmed Petitioner's conviction. People v. Pettigrew, 59 A.D.3d 958 (4th Dep't 2009) (Resp't Ex. G); lv. denied, 12 N.Y.3d 820 (2009) (Resp't Ex. I).

### D.   Petitioner's *Pro Se* Motion to Vacate the Judgment

On or about January 8, 2009, Petitioner moved, *pro se*, pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10, to vacate the judgment of conviction, arguing, in sum and substance, the same grounds that he argued in his *pro se* supplemental brief on direct appeal. See Resp't Ex. J.  The Niagara County Court denied the motion, and leave to appeal was denied. See Resp't Exs. K, L.

### E.   The Habeas Corpus Petition

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) the prosecutor maliciously prosecuted him in Lockport City Court for criminal contempt when there was no temporary order of protection in place on the day

Petitioner allegedly violated it; (2) the Lockport City Court issued a warrant in the absence of probable cause; (3) the Lockport City Court had no jurisdiction over Petitioner because Petitioner committed no crime because a temporary order of protection was not in effect when Petitioner committed some of the subject conduct; (4) the Lockport City Court unreasonably seized Petitioner based on a contempt crime that he did not commit; (5) the Lockport City Court denied Petitioner an impartial jury trial; (6) the Lockport City Court violated Petitioner's statutory speedy trial rights; (7) Petitioner was deprived of the effective assistance of counsel in the Lockport City Court; (8) the prosecutor committed misconduct in the Lockport City Court; (9) the prosecutor acted with vindictiveness in prosecuting Petitioner for a charge he allegedly did not commit; (10) the prosecutor committed misconduct in the Niagara County Court proceedings for presenting legally insufficient evidence to the grand jury; (11) the Niagara County Court violated Petitioner's right to a prompt arraignment; (12) Petitioner's guilty plea was coerced and thus involuntary, and his appeal waiver was invalid; (13) he was deprived of the effective assistance of counsel in the Niagara County Court; and (14) the government committed "[o]utrageous conduct" for prosecuting Petitioner for contempt when allegedly no temporary order of protection was in effect. See Pet. ¶ 12; Attachments (Dkt. No. 1).

**III. The Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."  28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

**IV.  The AEDPA Standard of Review**

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

**III. Analysis of the Petition**

**1.  Involuntary Guilty Plea and Invalid Waiver of Right to Appeal**

At ground twelve of the petition, Petitioner argues that: (1) his guilty plea was involuntary because it "was induce[d] by [s]ituational [c]oercion"; and (2) that the waiver of his right to appeal was invalid. Pet., Attachment at Ground Twelve. The former claim, which is raised for the first time in the instant petition, is unexhausted but deemed exhausted and procedurally defaulted from habeas review. The latter claim, which was raised and rejected on the merits on direct appeal,[1] is meritless.

> **A.  Petitioner's Involuntary Guilty Plea Claim is Unexhausted but Deemed Exhausted and Procedurally Defaulted**

Petitioner claims, for the first time in the habeas petition, that his guilty plea was coerced and thus involuntary. See Pet., Attachment at Ground Twelve. Because Petitioner failed to properly raise this claim in the state courts, it is unexhausted for federal habeas purposes. See 28 U.S.C. § 2254(b)(1). Respondent argues that this record-based claim should be deemed exhausted but found to be procedurally barred from habeas review because Petitioner has no means to exhaust the claim in state court. See Resp't Mem. of Law at 13-14, 23. The Court agrees. See Grey v. Hoke, 933 F.2d 117, 120-121 (2d Cir. 1991) ("[f]or exhaustion purposes, 'a federal

---

[1] In denying this claim, the Appellate Division found that: "[c]ontrary to the contention of defendant, his waiver of the right to appeal was voluntarily, knowingly, and intelligently entered." Pettigrew, 59 A.D.3d at 958-959 (citations omitted).

habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)); Spence v. Superintendent, 219 F.3d 162, 170 (2d Cir. 2000) ("Because [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted.")); CPL § 440.10(2)(c) (barring new record-based claims that could have been raised on direct appeal but unjustifiably were not).

Because this claim is procedurally barred, it may only be reviewed if Petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will result from the Court's failure to review the claim. See e.g., Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001); accord Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim [ ] procedurally defaulted.'") (quoting Aparicio, 269 F.3d at 90; alteration in Carvajal). Petitioner provides no cause for the default; rather, he incorrectly asserts throughout his pleadings that he "need not exhaust state remed[ies], to seek Federal Relief." See e.g., Pet. at pp 6-12; Attachment at pp 1, 2, 5-7, 11, 12, 14, 17, 21. In any event, even if Petitioner could

establish cause, he cannot establish prejudice insofar as the claim is meritless (see *infra*). Moreover, for purposes of the miscarriage-of-justice exception, Petitioner has made no showing that he is "'actually innocent' (meaning factually innocent) of the crime for which he was convicted." Carvajal, 633 F.3d at 108 (citing Bousley v. United States, 523 U.S. 614, 622, 623 (1998); footnote omitted). Accordingly, Petitioner's claim that his guilty plea was coerced and thus involuntary is procedurally defaulted from habeas review and dismissed on that basis.

Assuming arguendo this claim was not procedurally defaulted, it still would not warrant habeas relief. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). The Second Circuit has summarized the relevant factors as follows:

> [A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.

Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988). A reviewing court will uphold a guilty plea entered by a defendant

"'fully aware of the direct consequences . . . unless induced by threats . . . misrepresentation . . . , or perhaps by promises that are by their nature improper.'" Brady v. United States, 397 U.S. at 755 (quotation omitted). Since a defendant who pleads guilty waives several fundamental constitutional rights, in order for the waiver to be valid under the due process clause, it must be "'an intentional relinquishment or abandonment of a known right or privilege.'" McCarthy v. United States, 394 U.S. 459, 465 (1969) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). "Not only must the plea of guilty be voluntary, it must also be a knowing and intelligent act done with 'sufficient awareness of the relevant circumstances and likely consequences.'" United States v. Rossillo, 853 F.2d 1062, 1064 (2d Cir. 1988) (quoting Brady, 397 U.S. at 748).

Here, Petitioner was charged in a ten-count indictment (containing a charge of first degree rape, a Class B felony), and was permitted to plead guilty to first degree sexual abuse and first degree contempt, Class D and E felonies, respectively. At the beginning of the plea colloquy, the court asked Petitioner if he had sufficient time to discuss the plea with his attorney, to which Petitioner responded in the affirmative. P.M. 7. When asked by the court if he was satisfied with his attorney's representation, Petitioner initially stated that, "[he] [didn't] have a choice of being satisfied with it"; however, when the court

redirected Petitioner back to the question at hand, he answered, without hesitation, in the affirmative. P.M. 7-8. Immediately thereafter, when asked by the court if he had any complaints about his attorney, Petitioner stated that he did not and that "[he] [had] heard a lot of good words about [his attorney], that he's a good lawyer." P.M. 8. Additionally, Petitioner affirmatively stated on the record that he was aware of the corroboration aspect of the sexual abuse charge "before [his counsel] talked to [him]"; that he knew, prior to pleading guilty, that he would have to register as a sex offender; and, that his counsel told him about determinate sentences and that he had "read it [himself]". P.M. 8-9. Petitioner also acknowledged, on the record, that he did not use drugs or drink alcohol and that his prescription medication did not affect his ability to think. P.M. 10-11. Petitioner acknowledged that a guilty plea was in his best interest because, if he did not plead guilty, he faced consecutive sentences, and lengthier sentences on the more serious counts. P.M. 11-12. Petitioner denied that any other sentencing promise had been made to him or that he had been threatened, intimidated, or forced to plead guilty. P.M. 12-13. Petitioner stated that he was pleading guilty freely and voluntarily, after having consulted with his attorney. P.M. 13. Petitioner also acknowledged that by pleading guilty, he was waiving his trial rights. P.M. 13-14. The court then proceeded to explain to Petitioner that he would also have to

waive his right to appeal, as a condition of the plea. P.M. 14. Petitioner acknowledged this condition, asked the court no questions about it, and signed the written waiver of the right to appeal after he conferred with his attorney, and after counsel amended the waiver to state that Petitioner would receive concurrent sentences that would not exceed seven years. P.M. 13-15. Petitioner then admitted that he had committed sexual abuse and criminal contempt. P.M. 15-17. In sum, all of the implications of Petitioner's plea were known to him, and he entered it freely and voluntarily. Thus, his claim that his plea was involuntary is meritless and does not warrant habeas relief.

### B. Petitioner's Invalid Waiver of Right to Appeal Claim is Meritless

Petitioner argues that his appeal waiver was invalid. He appears to be claiming, as he did on direct appeal, that the court's statements during the plea colloquy erroneously indicated to him that the waiver of the right to appeal was "automatic," rather than a bargained-for condition of the plea. See Pet., Attachment at Ground Twelve; see also Pet'r Br. on Appeal, Point I at Resp't Ex. C. This claim was adjudicated on the merits in state court and therefore AEDPA applies.

Appeal waivers are generally valid so long as they are "knowingly, voluntarily, and competently provided by the defendant." United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000). The transcript of Petitioner's plea belies the instant

claim. The record reflects that the trial court initially explained to Petitioner that, "in order to accept the plea," he would be waiving several "important rights," including the right to have a jury trial, the right to confront witnesses, and the right to testify in his defense. P.M. 13. When asked if he understood that he had these rights, Petitioner answered in the affirmative. The trial court then asked Petitioner if he wished to waive these rights, and Petitioner indicated that he did. P.M. 13-14. The trial court then spent the next two pages of transcript discussing Petitioner's right to appeal, specifically stating to Petitioner at the outset that, "[a]nother condition of the plea . . . you would be waiving any right to appeal." P.M. 14. In response to this statement, Petitioner replied, "[y]es, sir." P.M. 14. The court then went on to explain that "all that means is that you won't be able to challenge any decision that's been made in the case thus far and that includes my sentencing. Do you understand that?" In response, Petitioner answered in the affirmative. P.M. 14. The following colloquy then occurred with respect to the written waiver of appeal prepared by the Assistant District Attorney, which Petitioner executed in open court after conferring with his attorney:

PROSECUTOR:       Judge, I prepared a written waiver, [defense counsel] has that. We'd require that be signed.

THE COURT:        Do you in fact waive your right to appeal?

```
PETITIONER:        Yes.

THE COURT:         All right.  Did he execute the written waiver?

DEFENSE COUNSEL:   No, your honor.  I just got it and I'll go
                   through it with him. ([Defense counsel] and
                   [Petitioner] conferring.).

. . .

THE COURT:         The record will reflect that the [Petitioner]
                   and his counsel have executed the waiver of
                   right to appeal in open court.
```

P.M. 14-15.

As is evident from the transcript, Petitioner's claim that the waiver of his right to appeal was invalid because the court's statements indicated that said waiver was "automatic" is meritless. The record clearly reflects that the trial court addressed Petitioner's right to appeal separate and apart from the other rights Petitioner was waiving "automatically" as part of the plea, expressly referred to the waiver of the right to appeal as a "condition of the plea," explained the consequences of waiving that particular right, and then afforded Petitioner an opportunity to confer with his attorney before executing the written waiver of his right to appeal.  P.M. 14-15.

Accordingly, the Court cannot find that the state court's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law.  The claim is therefore dismissed.

**2.      Petitioner's Remaining Claims are Waived by the Guilty Plea**

Petitioner's remaining claims are waived by Petitioner's voluntary, knowing, and intelligent guilty plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973) (finding that a defendant's properly counseled and entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights); accord United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'") (quoting Tollett, 411 U.S. at 267) (alteration in original)); see also United States v. Garcia, 339 F.3d 116, 117 (2d Cir. 2003) (per curiam) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings.") Whitehead v. Senkowski, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea."). Petitioner's voluntary, knowing and intelligent guilty plea (see *supra*) precludes the Court's review of Petitioner's remaining claims.

To the extent ground three implicates a jurisdictional issue(s) that survived Petitioner's guilty plea, said claim still provides no basis for habeas relief. Initially, Petitioner failed to apprise the state court of the federal constitutional dimension of this claim when he raised it in his CPL § 440.10 motion, framing it as a violation of state case and statutory law. As such, the claim is unexhausted. See Daye, 696 F.2d at 191 ("The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts."). Petitioner's failure to exhaust this claim, however, is not fatal to the Court's disposition of it on the merits. Because the Court finds the claim to be wholly meritless, it has the discretion to dismiss the petition notwithstanding Petitioner's failure to exhaust.[2] See 28 U.S.C. § 2254(b)(2); Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002).

At ground three of the petition, Petitioner argues that "[t]he Lockport City Court had no authority or jurisdiction over the matter or [him], because there was no crime committed by [him] on

---

2

The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims. See, e.g., Love v. Kuhlman, No. 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572 (S.D.N.Y. Dec. 12, 2001); Cruz v. Artuz, No. 97 Civ. 2508, 2002 U.S. Dist. LEXIS 11150 (E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399, 2008 U.S. Dist. LEXIS 24616 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F. Supp. 2d 544 (W.D.N.Y. 2002). A minority of courts in this Circuit have denied such petitions when they do not raise even a colorable federal claim. See Hernandez v. Lord, No. 00 Civ. 2306, 2000 U.S. Dist. LEXIS 10228 (S.D.N.Y. July 21, 2000) (discussing cases applying this standard) (internal quotation marks omitted). Under either of these standards, Petitioner's claims are meritless.

February 16, 17, 2007." Pet. ¶ 12, Ground Three. This argument is linked to count 9 of the indictment (charging Criminal Contempt in the Second Degree), which concerned Petitioner's failure, on or about February 16 or 17, 2007, to abide by the terms of an order of protection. See Resp't Ex. D. Petitioner, however, pleaded guilty to count 6 of the indictment, which concerned his failure, in March or April 2006, to abide by the terms of an order of protection. P.M. 2-3. Count 9 of the indictment was dismissed when Petitioner pleaded guilty to count 6 and thus his argument lacks a factual basis. Accordingly, ground three, to the extent it survived the guilty plea, is unexhausted and, in any event, meritless.

Accordingly, Petitioner's remaining claims provide no basis for habeas relief and are dismissed.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and

therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   May 15, 2012
         Rochester, New York